## United States District Court
## District of Massachusetts

```
_____
                            )
Jonathan Carvalho,          )
                            )
        Petitioner,         )
                            )
        v.                  )    Civil Action No.
                            )    18-12018-NMG
Steven Kenneway,            )
                            )
        Respondent.         )
_____ )
```

### MEMORANDUM & ORDER

**GORTON, J.**

In September, 2010, a Massachusetts Grand Jury in Suffolk County indicted Jonathan Carvalho ("Carvalho" or "petitioner") on one count of murder in the first degree and one count of unlawful possession of a firearm without a license. A jury trial was conducted in December, 2011, in Suffolk County Superior Court ("the Trial Court") and Carvalho was ultimately convicted on the firearm charge and on the lesser-included offense of second-degree murder. He was sentenced to life in prison on the murder conviction and a concurrent term of four to five years on the firearm conviction. Carvalho is currently incarcerated at the Massachusetts Correctional Institution in Shirley.

Following his convictions, Carvalho appealed and the Massachusetts Appeals Court ("MAC") affirmed.  The Massachusetts Supreme Judicial Court ("SJC") denied Carvalho's application for further appellate review and the United States Supreme Court denied Carvalho's Petition for Certiorari.  Thereafter, Carvalho filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

Carvalho seeks relief on four grounds: (1) the Trial Court erred by not giving a jury instruction on self-defense; (2) the Trial Court erred by not instructing the jury that reasonable provocation can arise without physical contact; (3) remarks by the prosecutor during her opening and closing argument violated Carvalho's constitutional rights; and (4) the trial judge initiated but failed to proceed properly with a <u>Batson</u> inquiry.

## I. <u>Factual Background</u>

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by a state court shall be presumed to be correct absent clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1).  The Court therefore looks to the facts found by the Trial Court as summarized on appeal by the MAC:

> Shortly after 11:00 A.M. on August 10, 2010, Hugo Valladares left work and returned to his apartment on the first floor of 230 Central Avenue in Chelsea.  The

[petitioner], a childhood friend of Valladares, was at the apartment.  [Petitioner] had been dating Daisy Lopez for several months.  Lopez's former boyfriend, Emanuel Flores, was friends with the victim, Luis Rodriguez.  The victim's girlfriend, Anmeris Burgos, lived on the second floor of the same building as Valladares.  The [petitioner] and Emanuel Flores had been involved in a dispute over Lopez, which had led to several prior physical altercations.  The victim had also become involved in this dispute, resulting in a "beef" between the victim and the [petitioner].  The [petitioner] had told Valladares that he and the victim were going to "squash the beef," or settle the dispute, through a fist fight.  The victim had also told Valladares that he and the [petitioner] were going to fight in order to settle the "beef."

On that morning, when Valladares opened the door to his apartment and found the [petitioner] inside, the [petitioner] told Valladares that the victim's car was outside.  He asked Valladares to go upstairs to Burgos's apartment and get the victim, so that he and the [petitioner] could "scrap it out."  The victim eventually met the [petitioner] in the parking lot outside of 230 Central Avenue.  Geraldo Flores, who witnessed the altercation from the other side of the parking lot, testified that the two walked toward each other and met in the middle of the parking lot.  The victim put his fists up while the two were circling one another.  The victim was saying "come on, let's go" and advancing on the [petitioner] while the [petitioner] backed away and said, "hold on, relax" and "let me talk to you."

As they moved closer to Geraldo, the victim still coming toward the [petitioner], Geraldo turned to walk away.  Two seconds later, he heard the first gunshot.  Geraldo turned back to face the pair and saw the [petitioner], about four yards away, pointing a gun at the victim as the victim, about ten yards away, ran back toward the door to 230 Central Avenue.  The [petitioner] fired a second shot, hitting the victim in the back and causing him to stumble into the door.  A third shot was fired as Geraldo ran from the scene.  The victim, who was unarmed, suffered a total of three gunshot wounds. The wound to his back proved fatal, and he died shortly after being taken to the hospital.  A jury convicted the [petitioner] of murder in the second degree and possession of a firearm without a license.

<u>Commonwealth</u> v. <u>Carvalho</u>, 90 Mass. App. Ct. 1110, 2016 WL
5955949, at *1 (2016) (footnotes omitted).

## II.  **Analysis**

### A. Legal Standard

To secure federal habeas relief in the wake of the
Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),
a petitioner must demonstrate that the "last reasoned state
court decision" in the case

> resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal
> law, as determined by the Supreme Court of the United
> States; or resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the state court proceeding.

28 U.S.C. § 2254(d); <u>see</u> <u>also</u> <u>Janosky</u> v. <u>St. Amand</u>, 594 F.3d 39,
47 (1st Cir. 2010) ("Because the [Supreme Judicial Court]
summarily denied further appellate review, we look to the last
reasoned state-court decision — in this case, the [Massachusetts
Appeals Court's] rescript."). Here, the last reasoned decision
of a state court is the decision of the MAC affirming the Trial
Court's conviction of Carvalho.

When determining what constitutes "clearly established
Federal law" as determined by the Supreme Court of the United
States ("the Supreme Court"), courts are to look only to the

holdings, and not dicta, of the Court's decisions.
Woods v. Donald, 575 U.S. 312, 316 (2015).

The Supreme Court has stated that the "contrary to" and
"unreasonable application" clauses of § 2254 have "independent
meaning," thus providing two different avenues for a petitioner
to obtain relief. Williams v. Taylor, 529 U.S. 362, 405 (2000).
A state court's adjudication will be "contrary to" clearly
established Supreme Court precedent if it either "applies a rule
that contradicts the governing law set forth" by the Supreme
Court or considers facts that are "materially indistinguishable"
from a Supreme Court decision and arrives at a different
conclusion. Id. at 405-06.

On the other hand, a state court's decision will constitute
an "unreasonable application" of clearly established Supreme
Court precedent if it "identifies the correct governing legal
principle" from the Supreme Court but "unreasonably applies that
principle to the facts of the prisoner's case." Id. at 413.
Consequently, a federal habeas court may not grant relief simply
because that court concludes in its independent judgment that
the decision of the state court applied clearly established
federal law erroneously or incorrectly. Id. at 411.  It must
further conclude that such an application was unreasonable. Id.

**B. Application**

**1. Jury Instructions**

Carvalho contends that the jury instructions at trial were erroneous for two reasons.  First, he avers that the Trial Court should have instructed the jury regarding self-defense.  Second, he complains that the Trial Court failed to instruct the jury that reasonable provocation does not require physical contact. Carvalho contends that the Trial Court's rejection of his proposed instructions violated his right to due process.  The Commonwealth responds that the MAC did not unreasonably apply clearly established law in finding that petitioner was not entitled to either instruction.

A federal habeas court must accept a state court's rulings on state law issues. Rodriguez v. Spencer, 412 F.3d 29, 37 (1st Cir. 2005) (citing Estelle v. McGuire, 502 U.S. 62, 67 (1991)). For that reason, improper jury instructions seldom form the basis for habeas relief. Niziolek v. Ashe, 694 F.2d 282, 290 (1st Cir. 1982).  It is not enough that a jury instruction be deemed "undesirable, erroneous, . . . universally condemned" or noncompliant with state model instructions. Gaines v. Matesanz, 272 F. Supp. 2d 121, 131 (D. Mass. 2003) (quoting Cupp v. Naughten, 414 U.S. at 146 (1973) (internal quotation marks omitted)); see also Estelle, 502 U.S. at 71.  Federal habeas

relief is warranted only when an instruction is deemed so erroneous that it violates a criminal defendant's federal right to due process pursuant to the Due Process Clause of the Fourteenth Amendment. Niziolek, 694 F.2d at 287 (holding "errors that render a fair trial impossible will be cognizable in federal habeas corpus, because such errors violate the due process clause").  Individual instructions must be examined in the context of the whole jury charge rather than in isolation and petitioner must show "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Estelle, 502 U.S. at 72; see also Waddington v. Sarausad, 555 U.S. 179, 191 (2009).

### i. Failure to Instruct on Self-Defense

Carvalho contends that the Trial Court's failure to instruct the jury on self-defense violates the principle announced by the Supreme Court that a defendant "is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." Mathews v. United States, 485 U.S. 58, 63 (1988).  He asserts that he reasonably believed that he was in imminent danger of serious bodily harm because Mr. Rodriguez was the aggressor and that he had tried to avoid a physical

confrontation prior to his use of force.  As a result, Carvalho submits that he was entitled to an instruction on self-defense.

Carvalho's assertions are unavailing.  As a preliminary matter, the First Circuit Court of Appeals ("the First Circuit") has rejected the view that the Mathews principle is clearly established federal law for purposes of federal habeas review. See Hardy v. Maloney, 909 F.3d 494, 500 (1st Cir. 2018) (noting that the Supreme Court has not applied the language in Mathews in any other case or to any defense "other than the entrapment defense at stake in Mathews" and describing the statement as "dicta, not a holding").  Therefore, this Court cannot conclude that the MAC acted contrary to clearly established federal law based on the principle in Mathews.

Even if the First Circuit did consider the language in Mathews to be clearly established federal law, a defendant is only entitled to an instruction as to a defense if a reasonable jury could find in his favor based on the evidence. Mathews, 485 U.S. at 63.  The MAC determined, however, that the evidence viewed in the light most favorable to Carvalho indicated that he was not entitled to a self-defense instruction because he did not "use[] all reasonable, available means of retreat" before using force, as required by Massachusetts law. See Carvalho,

2016 WL 5955949, at *2 (citing <u>Commonwealth</u> v. <u>Harrington</u>, 379 Mass. 446, 450 (1980)).  The MAC emphasized that

> the altercation took place in the middle of the day, in a parking lot abutting a public street.  There was no evidence that the defendant's means of egress was blocked, or that he, armed with a gun, could not have simply run away from the victim's raised fists.

<u>Id.</u>  Carvalho does not dispute that the escape options discussed by the MAC were available to him.  Instead, he contends that he did sufficiently retreat by backing away from Mr. Rodriguez and attempting to resolve the matter verbally.  The MAC's determination to the contrary, however, was not unreasonable.

Furthermore, the Trial Court found that Carvalho had shot the victim in the back as he fled and that the shot to the back was the cause of death.  Accordingly, Carvalho has not shown that the refusal to instruct the jury on self-defense "so infected the entire trial that the resulting conviction violates due process." <u>Cupp</u>, 414 U.S. at 147.

### ii. Erroneous Reasonable Provocation Instruction

Carvalho also avers that the instructions given to the jury were erroneous because they did not specify that reasonable provocation, which negates the malice necessary for a defendant to be found guilty of murder, does not require physical contact.

The Trial Court instructed the jury using the then-applicable model instruction on reasonable provocation, which

stated that "physical contact, even a single blow, may amount to reasonable provocation." Carvalho, 2016 WL 5955949, at *2 (quoting Model Jury Instructions on Homicide 29 (1999)). Standing alone, that instruction may be misleading because a finding of reasonable provocation does not require physical contact. See, e.g. Commonwealth v. Fortini, 68 Mass. App. Ct. 701, 706 (2007) (holding that a defendant was entitled to a reasonable provocation instruction when the "unexpected and aggressive approach" of the victim could have caused a reasonable person in defendant's position to feel "an immediate and intense threat"). In fact, the 2018 edition of the Massachusetts Model Jury Instruction on reasonable provocation was amended to state explicitly that "[r]easonable provocation does not require physical contact," the precise instruction requested by petitioner.

Individual jury instructions are not to be viewed in isolation, however, and instead "must be viewed in the context of the overall charge." Cupp, 414 U.S. at 146-47. The Trial Court provided a second instruction to the jury that defined reasonable provocation as that

> which would likely produce [in] a reasonable person such a state of anger, fear, passion, fright and nervous excitement which would have overcome his capacity for reflection and restraint and did actually produce such a state of mind of the defendant.

Carvalho, 2016 WL 5955949, at *3.  The additional instruction included no reference to physical contact as a prerequisite for reasonable provocation.  As a result, the MAC held that the additional instruction cured any potentially incorrect understanding created by the previous instruction and found that there was no possibility that the jury interpreted the instructions as Carvalho suggested. Carvalho, 2016 WL 5955949, at *3.  Carvalho has not met his burden of proving that the MAC's determination was unreasonable.  Therefore, petitioner's habeas challenge on the basis of improper jury instructions will be denied.

### 2. Prosecutorial Misconduct

Carvalho next argues that habeas relief should be granted because comments made by the prosecutor impermissibly appealed to jurors' sympathy.  Specifically, he cites five instances during the government's opening and the closing argument in which the prosecutor noted that the victim had learned that he was to become a father on the same day he was killed. Petitioner contends that those comments prejudiced the jury to such a degree that he was deprived of due process.

Federal habeas relief is rarely granted based on comments made by prosecutors because the issue is limited to "the narrow one of due process, and not the broad exercise of supervisory

power." <u>Donnelly</u> <u>v.</u> <u>DeChristoforo</u>, 416 U.S. 637, 642 (1974).
For relief to be granted, "it is not enough that the
prosecutors' remarks were undesirable or even universally
condemned." <u>Darden</u> v. <u>Wainwright</u>, 477 U.S. 168, 181 (1986)
(internal quotation omitted).  Convictions can be reversed based
upon the comments of a prosecutor only if those comments "so
infected the trial with unfairness as to make the resulting
conviction a denial of due process." <u>Id.</u>  The statements
therefore must be viewed in the context of the entire trial.
<u>United States</u> v. <u>Young</u>, 470 U.S. 1, 11 (1985).

Here, the MAC found that the prosecutor's comments "were
within the scope of permissible argument" because they helped
establish why the victim was present at the apartment building
that day. <u>Carvalho</u>, 2016 WL 5955949, at *3.  Furthermore, even
if the references to the victim's expectant fatherhood did have
the power to influence the jury, the Trial Court provided a
curative instruction noting that comments made by the prosecutor
during opening and closing statements are not evidence to be
considered by the jury.  The petitioner conceded as much in his
memorandum in support of his petition.

Viewing the comments in light of the totality of the
evidence of Carvalho's guilt presented at trial, the MAC's
finding that the prosecutor's comments did not amount to a

violation of due process is a reasonable application of the Supreme Court's pronouncement in Darden.  Accordingly, habeas relief will not be granted on that ground.

### 3. **Batson** Violation

Finally, Carvalho contends that he is entitled to habeas relief because the government improperly exercised peremptory challenges in a discriminatory manner during jury selection.

The Supreme Court held in Batson v. Kentucky, 476 U.S. 79 (1986) that excluding jurors on the basis of race violates the Equal Protection Clause of the Fourteenth Amendment.  To prove a Batson violation, courts have applied a three-pronged test:

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race; second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question; and third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

Davis v. Ayala, 576 U.S. 257, 270 (2015).

To establish a prima facie case of discriminatory motivation under the first prong of Batson, a petitioner must show that the facts "raise an inference that the prosecutor used [peremptory challenges] to exclude the veniremen from the petit jury on account of their race." Batson, 476 U.S. at 96.  The Court in Batson directed courts to "consider all relevant

circumstances" in determining whether a petitioner has met his or her burden. Id.

When a petitioner seeks federal habeas relief based upon a Batson challenge, courts must give significant deference to the findings of the trial judge.  In addition to the presumption of correctness afforded to all state court factual findings under 28 U.S.C. § 2254(e)(1), determinations of trial judges with respect to peremptory strikes are entitled to particular deference because they are in the best position "to evaluate context, nuance, and the demeanor of the prospective jurors and the attorneys." Caldwell v. Maloney, 159 F.3d 639, 649 (1st Cir. 1998).

Petitioner asserts that, during jury empanelment, the Trial Court judge engaged in a sua sponte inquiry regarding the prosecutor's peremptory challenges under Batson's first prong but erroneously failed to proceed to the second step of the analysis.  He cites an exchange between the trial judge and counsel in which the judge inquired about whether the government had challenged any Hispanic jurors.  The Commonwealth responds that the MAC found that the trial judge made no inquiry into the motive behind the challenges and thus had not invoked a challenge under the state law equivalent of Batson, Commonwealth v. Soares, 377 Mass. 461, 490 (1979).  Alternatively, the

Commonwealth proffers that, even if the trial judge's comments are considered to be an implicit Batson inquiry, he proceeded to find no prima facie discrimination.

As a preliminary matter, the brief, ambiguous exchange between the trial judge and the parties did not constitute a Batson inquiry.  At no point during that colloquy did the judge seek any explanation from the prosecutor or give any indication that he thought that any strike was improper.  Petitioner offers no clear and convincing evidence that rebuts the MAC's factual finding that the conversation did not constitute a Batson inquiry.  Consequently, this Court will not discredit the holding of the MAC on this issue.

Relief may still be warranted on habeas review notwithstanding a trial judge's failure to initiate a Batson inquiry if a prima facie showing of discrimination was in fact made. See Sanchez v. Roden, 753 F.3d 279, 288 (1st Cir. 2014) (ordering the district court to complete a Batson inquiry even though no such inquiry had previously been initiated).

Carvalho has not, however, met his burden of making the requisite prima facie showing.  Here, unlike in Sanchez, defense counsel did not object to any of the government's peremptory strikes and did nothing more than repeat comments made by the trial judge.  A trial court is under no obligation to conduct a

-15-

Batson inquiry under such circumstances. See United States v.
Snyder, 658 F.App'x. 859, 861 (9th Cir. 2016) (holding that the
trial judge's failure to initiate a sua sponte Batson inquiry
was not erroneous when defense counsel did not request an
inquiry into the government's reason for a peremptory strike).
Under these circumstances, the MAC's finding that the peremptory
challenges were not based on discriminatory intent is a
reasonable application of clearly established federal law
articulated in Batson and its progeny.  Therefore, habeas relief
will not be granted based upon that ground.

### C. Certificate of Appealability

#### 1. Legal Standard

Section 2253(c) of Title 28 of the United States Code
provides that a Certificate of Appealability ("COA") may issue
"only if the applicant has made a substantial showing of the
denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  In
order to make a "substantial showing", a petitioner seeking a
COA must demonstrate that

> reasonable jurists could debate whether (or, for that
> matter, agree that) the petition should have been resolved
> in a different manner or that the issues presented were
> adequate to deserve encouragement to proceed further.

Slack v. McDaniel, 529 U.S. 473, 484 (2000).  To meet the
debatable-among-jurists-of-reason standard, the petitioner must

prove "something more than the absence of frivolity or the existence of mere good faith." <u>Miller-El</u> v. <u>Cockrell</u>, 537 U.S. 322, 338 (2003).

### 2. Application

Petitioner has not made a substantial showing that the exclusion of an instruction on self-defense, the prosecutor's comments about the victim's expectant fatherhood or the prosecutor's peremptory strikes denied him a constitutional right warranting habeas relief.

Petitioner has, however, made a substantial showing that reasonable jurists could find that the MAC erred in finding that the jury deliberated with the understanding that physical contact was not required for reasonable provocation and that therefore the jury instructions were misleading.  When hearing the general instruction that "any physical contact, even a single blow, may amount to reasonable provocation," <u>Carvalho</u>, 2016 WL 5955949, at *2, outside the context of the second instruction given in this case, a jury might consider the general instruction controlling.  Massachusetts courts appear to have recognized that ambiguity, having amended the instruction to confirm that physical contact is not a prerequisite. Accordingly, a Certificate of Appealability should issue on Carvalho's claim that an erroneous instruction on reasonable

provocation was given to the jury in violation of his constitutional right.

### ORDER

For the foregoing reasons, the petition for writ of habeas corpus of Jonathan Carvalho (Docket No. 1) is **DISMISSED** but the Court <u>sua</u> <u>sponte</u> enters a certificate of appealability with respect to petitioner's claim as to the jury instruction on reasonable provocation.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated November 10, 2020